# EXHIBIT B

Complaint to TransUnion, LLC

CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND
(Civil Division)

LACHETT LANDRUM
12 Daimler Drive
Capitol Heights, MD 20743

    Plaintiff,
v.

Case No. CAL21-16050

Experian Information Solutions, Inc.
c/o Corporation Trust Incorporated
2405 York Rd #201
Lutherville Timonium, MD 21093

    Defendant,

Equifax Information Services, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant,

Trans Union, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant,

American Credit Acceptance
c/o Corporation Service Company
15 West South Temple, Suite 600
Salt Lake City, Utah 84101

    Defendant,

Transworld Systems Inc.
c/o Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

    Defendant,

Convergent Outsourcing, Inc.
c/o Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

    Defendant,

MRS BPO, LLC
c/o Cogency Global Inc.
1519 York Road
Lutherville, MD 21093

    Defendant,

Financial Management Solutions, LLC
d/b/a FMS Financial Solutions
c/o Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

    Defendant,

Persolve, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant,

Persolve Recoveries, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant,

Fair Collections & Outsourcing, Inc.
c/o Cherie Wright
12304 Baltimore Ave, Ste E
Beltsville, MD 20705

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, LaChett Landrum, files suit against defendants, and alleges:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1692 ("FDCPA"), 15 U.S.C. § 1681 ("FCRA"), Md. Code Ann., Com. Law §§ 14-202 and 13-301, and the common law tort of defamation.

## PARTIES TO THIS ACTION

2. Plaintiff is a natural person who resides in the state of Maryland.

3. American Credit Acceptance ("ACA") is a financing company that specializes in automobile loans. ACA has partnered with over 2,500 dealer partners in all 50 states.

4. Navy Federal Credit Union ("NFCU") is a global credit union headquartered in Vienna, Virginia, chartered and regulated under the authority of the National Credit Union Administration. NFCU is the largest natural member credit union in the United States, both in asset size and in membership.

5. Convergent Outsourcing, Inc. ("Convergent") operates as a third-party debt collector for its clients – creditors that consumers originally incurred a debt with – in the collection of outstanding debts the consumers owe the creditors. Convergent, fka ER Solutions, focuses on creditors in the retail, telecommunications, utilities, and financial services industries.

6. M.R.S. Associates Inc. and MRS BPO, LLC ("MRS") is a family owned and operated account receivable management company that was founded in 1991. MRS changed its name from M.R.S. Associates was dissolved and MRS BPO, LLC was created in 2007. The Company offers bank and retail card portfolio, consumer loan, auto deficiency, outsourcing, customer relationship, and back-office management services.

7. Transworld Systems Inc. ("TSI") provides receivables collection and management services. The Company focuses on commercial, education, financial, government, healthcare, and other industries in the United States.

8. Financial Management Solutions, LLC, d/b/a FMS Financial Solutions ("FMS") is a debt collector that collects debts for creditors in medical industry, and multi-family/real estate industry.

9. Fair Collections & Outsourcing, Inc. ("FCO") is a debt collector based in Baltimore Maryland that specializes in collecting debts for creditors or their agents, including but not limited to landlords and/or property managers.

10. Persolve, LLC and Persolve Recoveries, LLC ("Persolve") is a full-service legal recovery and collection firm that collects on different credit types, including credit cards, consumer loans and lines of credit, commercial loans and lines of credit, and auto deficiency.

11. Experian Information Solutions, Inc. ("Experian) operates as an information services company. The Company offers credit information, analytical tools, and marketing services to clients worldwide. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) for it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and obtains monetary fees for these services.

12. Trans Union, LLC ("TransUnion") operates as an information services company. The Company offers credit information, analytical tools, and marketing services to clients worldwide. TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) for it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and obtains monetary fees for these services.

13. Equifax Information Services, LLC ("Equifax) operates as an information services company. The Company offers credit information, analytical tools, and marketing services to clients worldwide. Equifax is a "consumer reporting agency," as defined in 15 U.S.C.

§ 1681a(f) for it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and obtains monetary fees for these services.

## FACTUAL ALLEGATIONS

### A. ACA Tradeline

14. ACA reported a repossessed auto loan tradeline with an inflated balance that did not include the payment ACA received when ACA sold the automobile.

15. ACA's computer systems contained records of the payment, but ACA still did not report Plaintiff's payment in its furnishing to the credit reporting agencies (CRA), including Equifax, Experian and Trans Union.

16. ACA is also reporting numerous charge-offs and recent charge-offs for this account when the account was charged-off back in March or April 2020.

17. Plaintiff called ACA to inquire about the account and during her conversation with the ACA representative, she disputed among other things, the balance, the legitimacy of the auto sale, the late fees and interest charged on the account.

18. Although ACA acknowledged the balance was not $19,407 and suggested the balance was no more than $11,624, it continued to report to the CRAs that Plaintiff owed $19,407.

19. Plaintiff disputed the ACA tradeline with the CRAs. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to ACA. As a result of Plaintiff's dispute, the CRAs and ACA adjusted the balance to $11,624 but failed to note that Plaintiff disputed ACA's records.

### B. NFUC Tradeline

20. NFCU reported an account that was charged off back in August 2014 as being charged off in September 2019. Additionally, NFCU was reporting numerous charge-offs for this account when there was only a single charge-off

21. NFCU's computer systems contained records that show the account was charged off in August 2014 with no subsequent activity. Despite its own records, NFCU reported collection activity after August 2014 and conveyed the misleading appearance that the account was a recent negative, which caused Plaintiff's score to be damaged more than if NFCU reported the account as an old negative from years ago.

22. Plaintiff called NFCU to dispute its records on the account and another account that was also appearing on her credit reports.

23. Plaintiff disputed the NFCU tradeline with the CRAs. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to NFCU. Both NFCU and Experian failed to conduct a reasonable investigation. For its part, NFCU did not conduct a careful review of the dispute and its records and just reported the same information that was in its system. As for Experian, it simply parroted NFCU's dispute response. Neither Defendant reported the dispute status.

### C. MRS Collection

24. MRS reported a collection for PEPCO under the name MRS Associates Inc.

25. MRS Associates does not have a license in Maryland.

26. If MRS BPO, LLC was the true entity reporting the PEPCO debt, MRS used a name other than its true name.

27. Plaintiff called PEPCO to dispute the MRS collection and it was removed because the collection contained inaccurate information.

### D. Convergent Collection

28. Convergent is reporting a collection for a T-Mobile phone bill in the amount of $1,712 to the CRAs.

29. Plaintiff called Convergent to inquire about the collection and the Convergent representative could not verify the account belonged to Plaintiff nor could it verify the $1,712 balance was accurate.

30. Specifically, the phone number associated with the account was not a phone number that Plaintiff ever had or used. Additionally, the contact email on file for the account holder was not an email that belong to or was used by the Plaintiff. And Convergent could provide no information on the application that opened the account.

31. The $1,712 balance, included $957.25 in fees that Convergent could not explain. The other amounts were a $116.64 cost for the phone, and balance for services of 699.00.

32. Plaintiff did not owe the $116 for the phone and $699 for use of the phone because Plaintiff did not open an account and did not use the phone. For the same reasons, Plaintiff did not owe any fees. Additionally, there were no basis to add on the fees.

33. Although Plaintiff informed Convergent that the collection was not hers and Convergent knew the fees were not authorized, Convergent continued reporting that Plaintiff owed $1,712 for the T-Mobile account.

34. Plaintiff disputed the Convergent collection with the CRAs. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to Convergent. Plaintiff did not receive dispute results from Experian. Although the collection was not on Plaintiff's credit report when she reviewed her Experian report in April 2021, Convergent may not have removed the collection during the processing of Plaintiff's dispute.

**E.   FMS Collection**

35. FMS is reporting a collection for a delinquent rental debt with Heather Hill Apts.

36. Plaintiff paid the amount that was legally due for the debt.

37. Despite Plaintiff's full payment of the legally owed amount, FMS is reporting the debt as "Legally paid in full for less than the full balance."

### F. FCO Collection

38. FCO is reporting a collection for a delinquent rental debt with Harbor Group Management for 8,960.

39. Plaintiff contacted FCO to inquire about the balance and learned that the balance included an unauthorized or illegal termination fee in the amount of $3,240. Further, FCO charged Plaintiff for four additional months of rent payments that FCO inflated the balance.

40. During her phone call with FCO, the Defendant made a settlement offer to Plaintiff.

41. However, Defendant did not disclose that the debt was too old to judicially enforce.

42. Although FCO has no records justifying a termination fee of $3,240 or four additional months of rent, and the Plaintiff pointed out to FCO that these charges were wrong, FCO continued reporting to the CRAs that Plaintiff owed $8,960.

43. Plaintiff disputed the FCO collection with the CRAs. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to FCO. Both FCO and Experian failed to conduct a reasonable investigation. FCO processed the dispute in a cursory manner and failed to review, much less consider the issues raised in Plaintiff's dispute. Instead, FCO confirmed that the *inaccurate* information in its records were reflecting verbatim on the Experian report. And Experian conducted *no* investigation and simply parroted FCO's dispute response.

44. A reasonable investigation would have entailed FCO contacting Harbor Management Group to determine the accuracy of the information in FCO's records. FCO was

not in possession of underlying documents or personal information that could verify its records were accurate and therefore, FCO needed to contact a third party or obtain additional information to verify the disputed information that it is furnishing to the CRAs.

### F.     Persolve Collection

45.     Persolve is reporting a collection for a delinquent auto loan with Bridgecrest Acceptance Corporation. Persolve reports the collection under the name Persolve Legal Group. The contact address listed for the Persolve is 9301 Corbin Ave, Ste 1600, Northridge, CA 91324, which is the listed principal office for Persolve Recoveries, LLC.

46.     Persolve Legal Group does not have a license to collect debts in Maryland.

47.     Persolve Recoveries, LLC obtained a MD debt collection license on August 21, 2020, however, Persolve began collecting on this debt on June 19, 2019.

48.     Persolve is reporting an egregiously inflated balance for the delinquent auto loan.

49.     Plaintiff contacted Persolve to dispute the inflated balance.

50.     Plaintiff spoke with a representative from Persolve that harassed her and failed to disclose that he was a debt collector.

51.     The Persolve representative stated that the balance had increased—by more than $8,000—to $23,682 due to interest accruing at 23%.

52.     Persolve has no contractual right to charge interest at 23%.

53.     Even if interest were applied to the balance at a rate of 23%, the balance would be substantially less than $23,682.

54.     Further, Persolve did not subtract the value of the automobile from the balance.

55.     Plaintiff disputed the Persolve collection with the CRAs. Upon information and belief, the CRAs forwarded notice of Plaintiff's dispute to Persolve. Neither Persolve nor Experian conducted a reasonable investigation of Plaintiff's dispute. Persolve basically ignored

the dispute and instructed Experian to *increase* the balance to $24,724. Experian merely adopted Persolve's dispute results and did no investigation of its own.

56. Had Persolve conducted a reasonable investigation, it would have inspected its records and either learned from its own records that the balance was inflated or would have determined that the information could not be verified without obtaining information outside of its possession. Since Persolve did not obtain additional information to investigate Plaintiff's dispute, Persolve should have apprised the CRAs that the information was inaccurate or not verifiable.

57. Experian knows Persolve is not a reliable source of information and that Persolve does not conduct reasonable investigations of consumers' disputes.

58. Notwithstanding Experian's personal knowledge that Persolve is a highly unreliable source of information, Experian blindly relies on Persolve's dispute results in favor of conducting its own independent investigation.

59. Because Experian relies solely on Persolve's dispute results, Experian does not bother to consider and review all the relevant information in a consumer's dispute.

### G.    TSI Collection

60. TSI also reported the PEPCO bill—the same bill that MRS reported—to the CRAs.

61. The TSI collection is inaccurate just as the MRS collection was inaccurate.

62. Upon information and belief, MRS and/or PEPCO informed TSI that Plaintiff disputed the PEPCO bill.

63. Despite learning from MRS or PEPCO that the debt was disputed, TSI reported the debt to the CRAs without reporting the dispute status of the debt.

64. Instead of reporting that the debt was disputed, TSI reported that the account was delinquent due to a natural or declared disaster.

65. Further, TSI reported the debt to the CRAs without notifying Plaintiff that it was collection on the PEPCO bill and that the collection was back on her report.

66. PEPCO also did notify Plaintiff that TSI was collecting on this debt.

67. Under the FDCPA, TSI was required to notify Plaintiff that it was collecting on the debt and that Plaintiff had the right to dispute the debt.

68. Upon information and belief, TSI did not notify Plaintiff of her right to dispute the debt because TSI knew the debt could not be validated.

69. Consequently, TSI has reported the debt for months without notifying Plaintiff of her right to dispute the debt and request validation or verification of the debt.

70. Plaintiff disputed the debt with the CRAs.

71. Upon information and belief, the dispute was forwarded to TSI by the CRAs.

72. TSI failed to conduct a reasonable investigation of Plaintiff's dispute and verified the PEPCO collection without making any corrections.

73. Without conducting its own investigation, Experian parroted TSI dispute results.

74. Upon information and belief, TSI reported the false collection as a collection tactic to coerce Plaintiff into paying the false debt amount.

75. TSI is not a reliable source of accurate information and Experian knows that.

76. Although TSI's information cannot be trusted, Experian blindly parrots the information that it receives from TSI to consumers' credit reports.

## COUNT ONE: VIOLATIONS OF FDCPA

77. Plaintiff incorporates the preceding allegations by reference.

78. Defendant MRS violated the FDCPA, 15 U.S.C. §§ 1692e, 1692f and 1692g by:

    a. attempting to collect on the debt without a debt collection license;

    b. using the name MRS Associates, which is not the Defendant's name;

      c.      knowingly reporting false derogatory information about the debt to the CRAs.

79. Defendant Convergent violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f by:

      a.      attempting to collect unauthorized fees;

      b.      inflating the balance for services that were not rendered or chargeable; and

      c.      reporting derogatory information to the CRAs that it knew was false.

80. Defendant Convergent violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f by:

      a.      misrepresenting the status of the debt; and

      c.      reporting derogatory information to the CRAs that it knew was false.

81. Defendant FCO violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f by:

      a.      attempting to collect unauthorized fees;

      b.      inflating the balance for services that were not rendered or chargeable;

      c.      reporting derogatory information to the CRAs that it knew was false; and

      d.      misrepresenting the legal status of the debt.

82. Defendant TSI violated the FDCPA, 15 U.S.C. §§ 1692e, 1692f and 1692g by:

      a.      reported false, derogatory information regarding the debt to the CRAs.

      b.      failing to notify Plaintiff of her rights to dispute and request verification or validation of the debt.

      c.      unfairly and/or unconscionably reporting false derogatory information to the CRAs as a collection method to coerce Plaintiff into paying the debt.

83. Defendant Persolve violated 15 U.S.C. §§ 1692d, 1692e and 1692f by:

      a.      using the name Persolve Lega Group, which is not the Defendant's name;

      b.      attempting to collect on the debt without a debt collection license;

      c.      reporting inaccurate and derogatory information about the debt to the CRAs;

      d.      assessing unauthorized interest onto the balance of the debt;

      e.      attempting to collect on a grossly inflated debt amount;

      f.      failing to disclose that it was a debt collector; and

      g.      harassing the Plaintiff.

84. As a result of Defendants' foregoing conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, humiliation and other emotional distress.

85. Defendants' conduct was the proximate cause of Plaintiff's damages.

## COUNT TWO: VIOLATION(S) OF MCDCA

86. Plaintiff incorporates the preceding allegations by reference.

87. Defendants MRS, Convergent, FMS, FCO, Persolve and TSI violated Md. Code Ann., Com Law § 14-202(11) by violating the FDCPA.

88. As a result of Defendants' foregoing conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, humiliation and other emotional distress.

89. Defendants' conduct was the proximate cause of Plaintiff's damages.

## COUNT THREE: VIOLATION(S) OF MCPA

90. Plaintiff incorporates the preceding allegations by reference.

91. Defendants MRS, Convergent, FMS, FCO, Persolve and TSI violated the MCPA, Md. Code Ann., Com Law § 13-301(14)(iii) when the Defendants violated the MCDCA.

92. As a result of Defendants' foregoing conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, credit damage, defamation, out-of-pocket costs, and distress.

93. Defendants' conduct was the proximate cause of Plaintiff's damages.

## COUNT FOUR: VIOLATIONS OF FCRA

94. Plaintiff incorporates the preceding allegations by reference.

95. Defendants ACA, NFCU, FCO, Persolve and TSI violated 15 U.S.C. § 1681s-2(b)(1) by failing to conduct a proper and reasonable investigation of Plaintiff's dispute(s).

96. Defendants ACA, NFCU, FCO, Persolve and TSI violated 15 U.S.C. § 1681s-2(b)(1) by falsely asserting to the CRAs that it had confirmed and *verified* the accuracy of the disputed information.

97. Defendant Convergent violated 15 U.S.C. § 1681s-2(b)(1) by failing to conduct a proper and reasonable investigation of Plaintiff's dispute.

98. Defendants ACA and NFCU violated 15 U.S.C. § 1681s-2(b)(1) by failing to instruct the CRAs to report there was an ongoing dispute.

99. Defendants Equifax, Experian and Trans Union (collectively, the "CRAs") violated 15 U.S.C. 1681e(b) by blindly relying on unreliable sources of information in its preparation and furnishing of credit reports containing derogatory and inaccurate information.

100. The Defendant CRAs violated 15 U.S.C. § 1681i(a) by failing to consider and review all relevant information in its investigation and conveyance of the dispute to the furnisher, by failing to remove or modify information that was not verified as accurate or incomplete and failing to send the results of investigation.

101. Defendants Equifax and Trans Union violated 15 U.S.C. § 1681g by failing to disclose Plaintiff's credit report after she requested it on January 24, 2021.

102. The Defendant CRAs violated 15 U.S.C. §§ 1681e(b), 1681i(a) and 1681s-2(b)(1) because they have enacted policies that they circumvent their responsibilities under the FCRA.

103. As a result of Defendants' violations of 15 U.S.C. §§ 1681e(b), 1681i(a) and 1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: loss of credit,

damage to credit profile and reputation, embarrassment, , frustration, humiliation and other mental and emotional distress.

104. Defendants' violations were deliberate and intentional for the Defendants knowingly adopted unreasonable policies, practices and procedures that were inadequate to comply with their obligations under the FCRA.

## COUNT FIVE: DEFAMATION

105. Plaintiff incorporates the preceding allegations by reference.

106. Defendants ACA and Persolve intentionally and maliciously made false statement(s) publicly about Plaintiff's credit history.

107. Defendants' own records established that they were reporting false information.

108. Defendants furnished Plaintiff's credit report or credit history to other third parties, such as creditors and/or users of credit reports.

109. Despite knowing that the information was false, Defendants published it anyway. Defendants knew that publishing such false information would decrease Plaintiff's chances of obtaining credit.

110. Defendants acted with knowledge of the falsity of the statements and with the intent to prevent the Plaintiff from obtaining credit.

111. Defendants' false statement(s) were published without a privilege.

112. As a result of the false and defamatory statements published by the Defendants, the financial character and reputation of the Plaintiff was harmed, his standing and reputation in the financial and credit community was impaired, and he suffered mental anguish.

113. As a direct and proximate result of the false and defamatory credit reporting published by Defendants, the Plaintiff's credit score and credit profiles were injured, thereby suffering a loss of prospective credit.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment separately against each Defendant for actual, statutory damages and punitive damages in amounts to be decided by the jury, and for attorney fees and costs in an amount to be decided by the Court.

Respectfully submitted,

_____
LaChett Landrum
12 Daimler Drive
Capitol Heights, MD 20743
(202) 321-0272